## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**GREGORY HOUSTON HOLT**                                          **PLAINTIFF**
**ADC #129616**

**V.**                              **NO. 4:24-cv-00074-BRW-ERE**

**DEXTER PAYNE,** *et al.*                                        **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.      Procedure for Filing Objections:

This Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation.  Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Judge Wilson can adopt this Recommendation without independently reviewing the record.

### II.     Overview:

On January 20, 2024, Gregory Houston Holt, an inmate at the Maximum Security Unit ("MSU") of the Arkansas Division of Correction ("ADC"), filed this lawsuit, through counsel, under 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"). *Doc. 1*. Mr. Holt, a Muslim, alleges that prison officials have violated his rights under RLUIPA and the Eighth Amendment by refusing to serve him a double-portion post-sunset meal during the month of Ramadan. Defendants are ADC Director Dexter Payne, sued in his official capacity, and MSU Warden James Shipman, sued in his individual and official capacities.[1] Mr. Holt seeks money damages and a permanent injunction requiring Defendants to provide him and other Muslim inmates double-portion sunset meals during Ramadan.[2]

On November 22, 2024, Mr. Holt filed a motion for partial summary judgment, brief in support, and statement of undisputed facts seeking judgment as a matter of law on his RLUIPA claim. *Doc. 33*. The same day, Defendants Payne and Shipman filed a motion for summary judgment, brief in support, and statement of undisputed facts seeking judgment as a matter of law on all claims against them. *Docs. 34, 35, 36*. All parties have responded and replied to the motions, which are now ripe for review. *Docs. 42, 43, 44, 45, 46, 47*.

---

[1] Mr. Holt concedes that for purposes of this lawsuit, he has abandoned his claims against ADC Deputy Director William Straughn and Chaplain Muhammad Ameen, who Mr. Holt named as Defendants but never served. *Doc. 45 at 16*. As a result, claims against Deputy Director Straughn and Chaplain Ameen should be dismissed without prejudice.

[2] Mr. Holt confirms that he does not seek money damages in connection with his official capacity claims. *Doc. 45 at 16*. As a result, I will not address Defendants' sovereign immunity argument.

For the reasons explained below, the Court should grant Defendants' motion and deny Mr. Holt's, thereby granting judgment as a matter of law in Defendants' favor and dismissing with prejudice Mr. Holt's claims for relief.

III.    **Discussion:**

A.    **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

B.    **Factual Background**[3]

The following facts are undisputed unless stated otherwise. Where the parties present different accounts, both are included.

Mr. Holt sincerely believes that as a Muslim, he must fast every day, from dawn to sunset, during the month of Ramadan.[4] *Doc. 44 at 2*. He also believes, sincerely, that he must eat "until he is full each night, to keep his mind and body healthy and strong for the next day's fast." *Id. at 2-3*.

MSU makes breakfast, lunch, and dinner available to inmates, without charge, in the prison cafeteria or "chow hall" at specific, preplanned times each day. *Doc. 36 at 2*. During Ramadan, Mr. Holt and other fasting Muslim inmates skip the lunch meal because it is served during daylight hours. *Doc. 45-4 at 1*.

Prior to 2023, during Ramadan, MSU provided Muslim inmates a double-portion meal each evening when they broke their fast. *Id. at 3*. In 2023, Defendant

---

[3]   The factual background is taken from: (1) the parties' statements of material facts and responses pursuant to Local Rule 56.1 (*Docs. 33-2, 36, 44, 45-4*); (2) Mr. Holt's deposition testimony (*Doc. 33-3, Doc. 34-1*); (3) Defendant Shipman's deposition testimony (*Doc. 33-4, Doc. 34-5*); (4) Mr. Holt's April 5, 2023 grievance papers (*Doc. 33-5*); (5) Lakenya Jackson's deposition testimony (*Docs. 33-6, 33-7*); (6) Chaplain Ameen's deposition testimony (*Doc. 33-9*); (7) former Chaplain Thomas Bourgeois' deposition testimony (*Doc. 33-10*); (8) Summer Patton's deposition testimony (*Doc. 33-14, Doc. 34-2*); (9) Mr. Holt's vital signs (medical records) (*Doc. 34-4*); and (10) Mr. Holt's declaration. *Doc. 45-2.*

[4]   Ramadan, a holy month for Muslims, occurs on the ninth month of the Islamic calendar, which falls at a different time every year on the Gregorian calendar. *Doc. 36 at 2.*

Shipman terminated the practice.[5] Pursuant to Defendant Shipman's new policy, during Ramadan 2023 and 2024, MSU offered fasting inmates a breakfast before dawn and a single-portion evening meal after sunset.[6] *Doc. 33-3 at 57; Doc. 24-2 at 51.* Shortly after the beginning of Ramadan 2023, Mr. Holt submitted the following grievance:

> [A] Muslim is to eat up until the fast begins to prepare the body for the next day of fasting. The [MSU], however, has made the unilateral decision to only serve one meal at the time of iftar (breaking of the fast).

---

[5] The parties disagree about why Defendant Shipman stopped serving double-portion post-sunset meals at Ramadan. In deposition, Defendant Shipman acknowledged that no ADC policy prohibits him from giving inmates double-portion meals and that he, unilaterally, put a stop to the practice for "health reasons." *Id. at 9, 14, 27.* He recalled that in 2022, during Ramadan, he observed kitchen workers stacking up chicken trays that would be stored and served to fasting inmates at the evening meal. *Id. at 6.* Defendant Shipman stated that leaving the food out risked mold "along with other things" and recalled that the prison once had an "outbreak . . . from leaving [chicken] out." *Id. at 6, 9.* Defendant Shipman offered an additional justification for his decision, stating: "[T]he other 400-something inmates [are] going to want double portions also. *Id. at 6.* In addition, Defendant Shipman acknowledged that he thinks "Muslims during Ramadan are supposed to eat less food[,]" and those seeking a double-portion meal are "trying to manipulate the system." *Doc. 33-4 at 6, 9.*

Mr. Holt contends that Defendant Shipman stopped serving double portions based on the theological views of ADC Muslim Coordinator, Chaplain Muhammad Ameed. *Doc. 39 at 17-18.* In deposition, Chaplain Ameed opined: "If you're fasting, you're going to be hungry. Fasting is not easy. Fasting is difficult." *Doc. 33-9 at 79.* Mr. Holt contends that Chaplain Ameen's view is theologically wrong. Mr. Holt believes that "Ramadan's fast is a daily dawn-to-sunset observance that requires fasting Muslims to prepare themselves—physically and spiritually—to begin and maintain each day's fast. A necessary part of these preparations is consuming enough food and water each night after breaking his fast so that he is ready to begin the next day's fast." *Doc. 1 at 3.*

[6] Mr. Holt described the procedure for the post-sunset meal: "They would have the Ramadan call. You go down there, and you get a tray just like you would during chow call, but at [a different] time. . . Everyone that was on a list, [an] officer would come . . . and open just those cells." *Doc. 33-1 at 67-68.* Mr. Holt recalled that in 2023, the post-sunset portions were sometimes smaller than usual because inmates were stealing food from the kitchen. *Id. at 68-69.* He stated that during the first ten days of Ramadan in 2024, the post-meals were small and served on Styrofoam trays, but after he spoke with a warden, the meals were served on regular-sized trays. *Id. at 75-76.*

This does not comply with the proper breaking of the fast. Having both meals on the tray does not in any way signify overindulgence. It does not take away from the meaning of Ramadan. I have participated in Ramadan in the Arabian Peninsula and in the U.S. and iftar is a large, plentiful meal.

*Doc. 33-5 at 2*. Defendant Shipman responded:

The feeding schedule may be adjusted to accommodate the inmate participants with the evening meal being equivalent in portion size to the one missed meal. Participants do not receive double-portion trays during the evening meal. Records indicate you are not prescribed a special diet tray requiring extra calories. Therefore, I find this issue without merit."

*Id*.

MSU inmates, including Mr. Holt, have access to a commissary where they can purchase food not served in the chow hall. *Doc. 33-3 at 66*. Each year, in the months before Ramadan, Mr. Holt stockpiles commissary food that he eats for breakfast and to supplement his diet when necessary. *Doc. 45-2 at 4.*

In deposition, Mr. Holt testified he would "sometimes" go to the chow hall for the predawn breakfast, served between 2:30 and 5:00 a.m. *Doc. 33-3 at 65*. He stated that during Ramadan, he would stay in his cell and eat commissary food later in the morning so it would "carry [him] into the time to start fasting." *Doc. 45-2.* Mr. Holt recalled that during Ramadan 2023, he did not go to chow hall for breakfast "a good amount" of the month, and during Ramadan 2024, he did not take a predawn tray about "half the time." *Doc. 33-3 at 83*. In opposition to Defendant's summary judgment motion, however, Mr. Holt submitted a declaration that provides different

information. Mr. Holt now states that he rarely "ever" goes to the chow hall for breakfast because he prefers not to get out early and he does not particularly like the chow hall breakfast. *Doc. 45-2 at 4*. He states: "I can easily supplement my breakfast with a small pop tart or cereal. But I could not afford . . . the cost of enough food . . . to make up for the second dinner portion I no longer receive . . . . " *Id*.

Although Mr. Holt did not receive double-portion, post-sunset meals from the MSU cafeteria during Ramadan 2023 and 2024, he did not break his fast during the daylight hours. *Doc. 34-1 at 7*. He reports that both years, he experienced hunger pangs, dizziness, headaches, and frustration during Ramadan (*Doc. 33-3 at 94-96*), and he lost three pounds during the last two weeks of Ramadan 2024.[7] However, Mr. Holt did not request to be seen by available medical care providers for hunger, dizziness, headaches, frustration, weight loss, or any condition related to lack of food during Ramadan 2023 or 2024.[8]

Pursuant to a contract entered in May 2023, Summer Patton serves as the

---

[7] The record does not fully support Mr. Holt's allegation. In 2024, Ramadan began March 10 and ended April 9. *Doc. 36 at 2*. According to Mr. Holt's record of vital signs, he weighed 205 pounds on April 1, 2024. *Doc. 34-4 at 2*. On April 17, 2024, a week after Ramadan ended, Mr. Holt weighed 202 pounds. *Id*. However, for purposes of ruling on summary judgment, the Court assumes Mr. Holt lost three pounds during Ramadan, as he contends.

[8] In deposition, Mr. Holt stated that he had "chronic care every 90 days, and I was seen during that month where this stuff was discussed." *Doc. 33-3 at 96*. However, Mr. Holt did not clarify what his "chronic care" entailed or the problems it addressed, and he provides no medical records showing that he received such care.

ADC's registered dietician, and her duties include reviewing monthly prison menus. *33-14 at 5-6*. In deposition, she testified that during Ramadan in 2022, 2023, and 2024, the ADC served non-fasting inmates approximately 3,000 calories per day over a seven-day period. *Id. at 20*. She explained that the ADC's regular diet for inmates generally follows the United States Department of Agriculture Dietary Guidelines ("USDA Guidelines") for estimated calorie needs. *Id. at 32*. The USDA Guidelines, available online, provide "estimated calorie needs per day" ranging from 2,000 to 3,000 for adult males falling within thirteen discrete age groups.[9]

Ms. Patton testified that an inmate eating only breakfast and one dinner during Ramadan would consume at least 2,000 calories per day. *Id at 51-52*. In Ms. Patton's opinion, consuming 2,000 calories each day during Ramadan is nutritionally adequate. She explained: "It's short term and so . . . they're not receiving so [few] calorie[s] that it's going to affect their muscle mass or subcutaneous fat loss like we talked about with malnutrition. *Id. at 54.* She noted that "everyone is different," but an inmate consuming 2,000 calories per day "shouldn't be in any way starving or hungry because it's plenty of calories to keep their body running." *Id. at 86*. Ms. Patton acknowledged that on a given day, the combined calorie count for chow hall

---

[9] United States Department of Agriculture Dietary Guidelines for Americans, 2025-2025 at pp. 139-414. See https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary Guidelines_for_Americans-2020-2025.pdf (hereinafter "USDA Guidelines") (last accessed February 26, 2025).

breakfast and lunch might exceed the calories served for dinner, but she stated that

normally, fasting inmates would receive "the best" two meals of the day. *Id. at 71.*

## C.     Eighth Amendment Claim[10]

The Constitution "does not mandate comfortable prisons," but its prohibition

of cruel and unusual punishment forbids "inhumane ones." *Farmer v. Brennan*, 511

U.S. 825, 832 (1994). A prisoner alleging an Eighth Amendment violation must

prove objective and subjective elements. First, the deprivation alleged must be

objectively, sufficiently serious, resulting in denial of the "minimal civilized

measure of life's necessities." *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342

(1981)). Second, the prison official's conduct must reflect a subjective state of mind

showing deliberate indifference to the health or safety of the prisoner. *Id*. (citations

omitted). Specifically, "a prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the

official knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference. *Id. at*

---

[10] In addition to suing Defendants in their official capacities, Mr. Holt sues Defendant Shipman in his individual capacity for money damages. At the summary judgment stage, a defendant is entitled to qualified immunity unless: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). Because the record, viewed in a light most favorable to Mr. Holt, fails to support an Eighth Amendment violation, Defendant Shipman is entitled to judgment in his favor, and it is unnecessary to separately address his assertion of qualified immunity.

*837*. The Eighth Circuit has explained: "A claim of deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (cleaned up).

The Eighth Circuit has held that prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, to show that he suffered an objectively serious deprivation, the inmate must demonstrate that "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.*

Mr. Holt presents no evidence that he suffered an immediate danger to his health or that his health actually suffered from lack of double-portion, post-sunset meals during Ramadan. In deposition, Mr. Holt stated that he suffered hunger, dizziness, and headaches during Ramadan in 2023 and 2024, but he offers no objective evidence to corroborate his subjective complaints. *Doc. 33-3 at 94-96.* Mr. See *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (noting that self-serving affidavits will not defeat a properly supported motion for summary judgment, rather, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.").

Mr. Holt recalled that he also experienced anger and frustration "over the recalcitrance of the defendants." *Doc. 33-3 at 96*. However, he could not say whether his anger and frustration manifested physical symptoms, and he acknowledged that he did not seek mental health counseling. *Id*.

When asked how often he suffered headaches during Ramadan 2023, Mr. Holt answered: "Quite regularly because I have a condition, and the lack of food exacerbates it." *Doc. 33-3 at 95*. Mr. Holt recounted that he suffered headaches with the same frequency during Ramadan 2024, but he acknowledged that at no time during Ramadan 2023 or 2024 did he seek medical care for headaches or dizziness associated with inadequate nourishment. *Id. at 95-96*.

According to Mr. Holt's medical records, in 2023, a week after Ramadan, he weighed three pounds less than the week before Ramadan began. However, his medical records show that from 2021 through 2024, his weight fluctuated between 197 and 218 pounds, and it was common for his weight to vary three or more pounds between weight checks.[11] *Doc. 34-4*. Mr. Holt's loss of three pounds, a week after Ramadan ended in 2023, is entirely consistent with his weight history, and falls far short of evidence that his diet posed any risk to his health.

---

[11] Between August 21, 2023 and September 6, 2023, Mr. Holt lost three pounds. *Doc. 34-4 at 2*. Between December 5, 2022, and January 18, 2023, Mr. Holt lost five pounds. *Id*. Between October 27, 2022, and December 5, 2022, Mr. Holt lost fifteen pounds. *Id*.

Ms. Patton, a registered dietitian, testified that everyone is different, but generally, reducing an inmate's daily calorie intake from 3,000 to 2,000 should not cause starvation or hunger and still supply "plenty of calories to keep [the] body running." *Doc. 33-14 at 86*. Mr. Holt argues that contrary to Ms. Patton's opinion, the USDA Guidelines provide that "men ages 19-55 require 2,800 to 3,000 calories per day just to maintain a stable weight," and the ADC's own diet manual requires each facility to provide an average of 3,000 calories a day. *Doc. 45-4*. This argument is unpersuasive for several reasons.

First, neither the USDA Guidelines nor the ADC diet manual define the Eighth Amendment standard for adequate nutrition. Second, the USDA Guidelines acknowledge that a person's caloric needs depend on factors unique to that individual,[12] and the ADC's 3,000 calorie diet is overinclusive to cover the wide-ranging estimated calorie needs for adult men of varying ages, heights, and activity levels. Third, Mr. Holt offers no evidence that he experienced significant weight loss

---

[12] The USDA Guidelines state that calorie needs vary depending on an individual's height, weight, level of physical activity, and "other factors." USDA Guidelines at 139. For adult males, the Guidelines' reference male is 5 feet 10 inches tall and 154 pounds. *Id*.

According to information available on ADC's public website, Mr. Holt was born on June 17, 1975. Documents recording Mr. Holt's vital signs show that he is 6 feet tall, and his weight has ranged from 197 to 218 pounds over the last four years. *Doc. 34-4*. In deposition, Mr. Holt testified that he chose to stay in his cell 22 hours a day, and he works as a barracks porter from approximately 7:30 a.m. to between 9:30 and 10:00 a.m., performing tasks such as taking out trash and mopping. *Doc. 33-3 at 11-12*. The Guidelines provide estimated calorie needs per day for males 46 to 50 as follows: (1) 2,200 for sedentary males; (2) 2,400 for moderately active males; and (3) 2,800 for active males. USDA Guidelines at 140.

12

or that his health suffered from inadequate nutrition during Ramadan 2023 and 2024.

Fourth, given Mr. Holt's concession that he often skips the free, predawn breakfast

offered during Ramadan and eats commissary items instead, it impossible to confirm

his precise calorie intake and possible that he consumed more than 2,000 calories

each day during Ramadan 2023 and 2024.

Mr. Holt has failed to come forward with evidence to allow a reasonable fact

finder to conclude that either Defendant was deliberately indifferent to an excessive

risk to his health by failing to provide him double-portion, post-sunset meals during

the month of Ramadan in 2023 or 2024. As a result, Defendants are entitled to

judgment as a matter of law on Mr. Holt's Eighth Amendment claim.

**D.   RLUIPA Claim[13]**

RLUIPA provides: "No government shall impose a substantial burden on the

religious exercise of a person residing in or confined to an institution . . . even if the

burden results from a rule of general applicability, unless the government

demonstrates  that imposition of the burden on that person--(1) is in furtherance of a

---

[13] Defendant Shipman, sued in his individual capacity, asserts that he is qualifiedly immune from liability as to Mr. Holt's RLUIPA claim. Because the record fails to support Mr. Holt's RLUIPA claim, it is unnecessary to separately address Defendant Shipman's assertion of qualified immunity.

compelling governmental interest; and (2) is the least restrictive means of furthering

that compelling governmental interest."[14]  42 U.S.C. § 2000cc-1(a).

Mr. Holt bears the initial burden to establish that Defendants' failure to

provide him a double-portion post-sunset meal during Ramadan placed a substantial

burden on his ability to practice his religion. *Patel v. U.S. Bureau of Prisons,* 515

F.3d 807, 813 (8th Cir. 2008). If he makes that showing, the burden shifts to

Defendants to prove that their action or policy was in furtherance of a compelling

governmental interest and was the least restrictive means of furthering that

compelling governmental interest.[15] *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).

There is no dispute that Mr. Holt sincerely believes that the Qur'an instructs

him to eat until he is full at the post-sunset meal during Ramadan. *Doc. 44 at 2.* But

---

[14] In the prison context, RLUIPA provides greater protection for religious exercise than offered under the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 357-358 (2015). The First Amendment permits regulations that substantially burden religious exercise so long as the restriction is reasonably related to a legitimate penological interest. RLUIPA, on the other hand, prohibits substantial burdens on religious exercise unless the government can demonstrate the burden is in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest. *Id*. In addition, the First Amendment protects the exercise of religious beliefs that are central to an individual's religious beliefs, but RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). To be protected under either the First Amendment or RLUIPA, the religious exercise at issue must be grounded in a sincerely held religious belief, *Holt v. Hobbs*, 574 U.S. 352, 360-61(2015), which is not at issue in this case.

[15] "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs*, 574 U.S. 352, 354 (2015) (cleaned up) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)).

14

he does not profess that consuming a double-portion meal after sunset is an end in itself for religious purposes. He contends that a double-portion evening meal is necessary to "keep his mind and body healthy and strong for the next day's fast." *Doc. 33-2 at 1*.

Defendants' failure to provide Mr. Holt double-portion evening meals at Ramadan would substantially burden his religious exercise if it prevented him from participating in religious activities at Ramadan or pressured him to choose between breaking his fast and receiving adequate nutrition. *Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (explaining that prison grooming policy substantially burdened inmate's religious exercise because it required him to shave his beard in violation of his religious beliefs or face disciplinary action). As discussed in connection with Mr. Holt's Eighth Amendment claim, he presents no objective evidence to corroborate that he experienced hunger, dizziness, headaches, and frustration from lack of adequate nutrition. In addition, although Mr. Holt was not satisfied with the amount of food he received, he presents no evidence the lack of a double-portion accommodation left him unable to pray or engage in any other aspect of his religious exercise during Ramadan in 2023 and 2024.

In his statement of undisputed facts, Mr. Holt claims that when he does not consume enough at night to satisfy his hunger, he suffers severe hunger pangs, dizziness, headaches, and frustration, "all of which affect his ability to keep his mind

and body focused on his fast and exacerbate his pre-existing health conditions." *Doc. 33-2 at 2*. However, Mr. Holt offers no evidence or concrete examples of how his focus suffered. In deposition, when asked whether he recalled "any other effects" from the amount of food he received, other than hunger pangs, headaches, dizziness, anger, and frustration, Mr. Holt answered, "Not right off, no." *Doc. 33-3 at 97.*

Both Mr. Holt and Defendants move for summary judgment on Mr. Holt's RLUIPA claim, and "cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Greer v. United States,* 207 F.3d 322, 326 (6th Cir.2000) (quoting *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 692 (10th Cir.1981)); see also *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 925 n.3 (8th Cir. 2016) (quoting the same). Here, Mr. Holt's bare allegations fail to raise a material question of fact as to whether Defendants placed a substantial burden on his ability to practice his religion.[16]

In addition, despite Mr. Holt's recent testimony that he rarely if ever goes to chow hall for breakfast because he does not like the food, and he cannot afford

---

[16] See *Pleasant-Bey v. Tennessee Dep't of Correction*, No. 18-5424, 2019 WL 11880267, at *4 (6th Cir. Apr. 4, 2019) (concluding that missing meals during the Ramadan fast did not place a substantial burden on the exercise of religion where prisoner did not feel compelled to modify his behavior and break his fast); *Maynard v. Hale,* No. 3:11-cv-1233, 2012 WL 3401095 (M.D.Tenn. Aug.14, 2012) (finding that missed pre-dawn and evening meals during Ramadan fast did not affect inmate's fast or ability to practice his religion and therefore did not amount to a substantial burden on religious practice).

enough commissary to replace a 1,000 calorie meal, he still had the opportunity to eat the predawn breakfast offered in chow hall and supplement his single-portion dinner with commissary items he could afford and normally ate for breakfast. Mr. Holt rejected this available option, which further indicates that his ability to practice his religion was not substantially burdened. *Patel,* 515 F.3d at 811 (concluding that prisoner who had the option of purchasing food items meeting his religious needs failed to create a trial worthy issue on whether his ability to practice his religion had been substantially burdened).

On this record, Mr. Holt has failed to provide sufficient evidence for any fact finder to conclude that Defendants substantially burdened his ability to practice his religion by serving him single-portion meals at sundown during Ramadan.

## IV.    Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 34*) be GRANTED. Defendants Payne and Shipman are entitled to judgment as a matter of law.

2.    Mr. Holt's claims against Defendants Straughn and Ameen should be DISMISSED, without prejudice, based on his failure to serve those Defendants.

3.    Mr. Holt's motion for partial summary judgment (*Doc. 33*) be DENIED.

4.    The Clerk be instructed to close this case.

DATED 26 February 2025.

_____
UNITED STATES MAGISTRATE JUDGE